WALLACE, JUDGE:
Patty Sheets, as Administratrix of the Estate of Ray Samuel Six, deceased, filed this claim against the respondent for damages as the result of the death of Ray Samuel Six. Patty Sheets, a daughter of the deceased, lived with her family at Star Route 1, Littleton, West Virginia. The decedent also lived in Littleton with his wife, another daughter, and her son. He was a large man in his early 70’s. He retired from his employment with the Baltimore & Ohio Railroad in 1950 due to a disability.
On July 17, 1975, he was referred to Dr. Jose Mendoza, Director of the Northern Panhandle Mental Health Center in Wheeling, West Virginia, by the director of mental health in New Martinsburg for examination and commitment to Weston State Hospital. He was brought to Dr. Mendoza’s office in an ambulance under restraint. Dr. Mendoza’s diagnosis was that of “an old man in his 70’s, very confused, disoriented” suffering from “organic brain syndrome due to arteriosclerosis ... or dementia”. Dr. Mendoza prescribed that the decedent be hos *333 pitalized at Weston State Hospital with subsequent transfer to a nursing home. He was admitted to the hospital on July 18,1975.
The claimant testified that she was very close to her father and that she had had him over for dinner on July 16, 1975. She did not know he was committed to the hospital until noon on July 18. Although she tried, she did not see him again until his admission to the University Hospital at West Virginia University on July 23, 1975. She further testified that she believed that her mother and sister had referred her father to Dr. Mendoza, and that the “people around town knew he had hardening of the arteries”. On July 20, he was treated by Dr. Baldonado Hao, staff physician at the Weston hospital, for a superficial scratch on the left middle finger of his left hand, which he received while attempting to jump the fence. Dr. Hao ordered 24-hour mechanical restraints because the patient was “agitated and unmanageable, confused, disoriented, and combative”. Later, Mr. Six was referred to Dr. Hao for treatment of diarrhea and fever. At 8:00 a.m. on July 21, she examined him for injuries received when he fell against the wall of his room. He received a hematoma, contusion, and ecchymosis around the left eye. She prescribed ice compress on the eye and medication for the inflammation. She further ordered x-rays of the eye and skull and ordered him transferred to the medical center at the hospital. During the examination, he did not respond, and was very confused and out of contact with reality.
At the time Mr. Six fell, he was attended by two aides, Nellie Bell Watson and James Meyers. He was in a private room furnished with two beds, a chest of drawers, and a potty chair. He was suffering from a severe case of diarrhea. The aides changed his bed four times the night- of his fall. Just prior to his injury, the two aides had untied the restraints, washed and cleaned the patient, and sat him down on the potty chair while they changed the bed. Meyers was behind the bed, and Mrs. Watson was on the other side with her back to the patient. Mr. Six, unsteady on his feet, jumped up from the chair and went out into the hall. The aides found him standing in the hall and led him back to the room.
*334 Mrs. Watson explained what happened.
“When we got in the bedroom and got inside the door, he was jerking trying to get away from us, you know, and we was trying to hold on to him. Mr. Meyers went in the door first, and then Mr. Six he had hold of his arm, and I had hold of his other arm. Then I came on in and just as I got inside the door, he hauled off and gave me a jerk and slung me over in the corner into the chest of drawers, just like a whirligig . . . When I turned back around, Mr. Meyers didn’t have ahold of him, and he went staggering and he fell into the wall and hit his head against the wall . . . Mr. Meyers was standing over from Mr. Six and he didn’t have ahold of Mr. Six when I turned around. Mr. Six was very unsteady on his feet, and he stumbled, and he went into the wall, hit his head against the — I call it the door facing.”
Mrs. Watson further responded.
“Q. Meyers try to restrain him with force?
A. Meyers just tried to hold onto his arm same as I did to keep him from falling and to try to get him back into his room.
Q. Didn’t he grab him by the arm and shake him?
A. No. He didn’t shake him.”
During the hearing, the hospital employees were questioned about Mr. Meyers’ treatment of the patients. Apparently, there were rumors about Mr. Meyers, but that was the extent of the testimony. Mrs. Watson testified that, because of the rumors, she asked that she not be assigned to work with him again. She also stated that “. . . He seemed like a nice somebody to work with. He helped me good. I have no complaint about his working or helping me, and I never heard him say anything out of the way to any of the patients that night whatsoever.”
The record indicated that Mr. Meyers was reported for insubordination and later discharged.
Mr. Six was transferred to the University Hospital at West Virginia University on July 23, 1975. Dr. G. Robert Nugent *335 attended him at the University Hospital. He stated that he was agitated and confused; that he would talk when made to talk, but didn’t make sense.
Mr. Six’s condition deteriorated, developing into pneumonia, which is a common problem with elderly people injured in falls. Mr. Six died on August 8, 1975.
Patty Sheets testified that, while in the University Hospital, her father, in response to a question as to what happened to him, responded, “They beat me”. After completion.of the testimony, respondent’s objection to this testimony was withdrawn. However, the record does not establish that there was a physical beating of the decedent.
•The claimant relied upon the doctrine of res ipsa loquitur to establish liability, which doctrine the Court finds is not applicable to this case. The doctrine of res ipsa loquitur cannot be invoked where the existence of negligence is solely a matter of conjecture and the circumstances are not proved but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant’s negligence is the only inference that can reasonably and legitimately be drawn from the circumstances. Davidson’s Inc. v. Scott, 149 W.Va. 470, 140 S.E. 2d 207 (1965); Mullins v. Board of Governors of W. Va. University, 8 Ct. Cl. 33 (1969). The testimony is unrefuted that the decedent fell after freeing himself from the hospital aides and received injuries resulting in his ultimate death. The Court finds that the claimant has failed to prove by a preponderance of the evidence that the injury and subsequent death oh the decedent were caused by the negligence of the respondent. Accordingly, the claim is disallowed.
Claim disallowed.